Thiago M. Coelho (State Bar No. 324715)
*thiago.coelho@wilshirelawfirm.com*
Shahin Rezvani (State Bar No. 199614)
*shahin.rezvani@wilshirelawfirm.com*
Chumahan B. Bowen (State Bar No. 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (State Bar No. 281404)
*jennifer.leinbach@wilshirelawfirm.com*
Reuben Aguirre (State Bar No. 319699)
*reuben.aguirre@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
*Attorneys for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA PITRE, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>    v.<br><br>COLGATE-PALMOLIVE COMPANY and TOM'S OF MAINE, INC.,<br><br>    *Defendants*. | Case No.:<br><br>**CLASS ACTION COMPLAINT:**<br><br>1. INTENTIONAL MISREPRESENTATION;<br>2. NEGLIGENT MISREPRESENTATION;<br>3. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500 ET. SEQ.;<br>4. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.;<br>5. BREACH OF EXPRESS WARRANTY;<br>6. BREACH OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA") CALIFORNIA CIVIL CODE § 1770(A)(5)<br>7. BREACH OF IMPLIED WARRANTY OF MERCHANTABLITY.<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Yolanda Pitre ("Plaintiff") brings this class action against Defendants Colgate-Palmolive Company and Tom's of Maine, Inc. (each a "Defendant," and collectively, "Defendants").

## INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff, and others similarly situated, who purchased toothpaste products from Defendants. Defendants distribute, market and sell Tom's of Maine toothpaste products, which they tout as safe, healthy, natural, and effective. Defendants' toothpaste products were knowingly contaminated by harmful mold, disease-causing bacteria, and other contaminants. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct and seek injunctive relief and full restitution for the purchase price of the contaminated toothpaste products.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

3. This Court has personal jurisdiction over Defendants. Defendants have sufficient minimum contacts with the state of California and purposefully availed themselves, and continue to avail themselves, of the jurisdiction of California through the privilege of conducting their business ventures in the state of California, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendants do business throughout this district. The plaintiff made her purchase of Tom's of Maine toothpaste in Redding, California, from a local retailer in this district and used the toothpaste in this district.

## THE PARTIES

5. Plaintiff Yolanda Pitre is a resident of San Mateo, California who purchased Tom's of Maine Simply White Mint Paste on or around March 1, 2024, from a retailer in this district.

1

CLASS ACTION COMPLAINT

6. Before her purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and she made her purchase of the toothpaste in reliance thereon. Plaintiff specifically relied upon representations made by Defendants that the product was "naturally sourced," "good for you," and created with "rigorous ingredient and packaging standards." Plaintiff did not receive the promised benefits or the total value of her purchase. Plaintiff would not have purchased the product had she known it was contaminated and was economically injured by Defendants' misrepresentations, which induced her to purchase the product at a premium. Plaintiff would purchase the product again if she was assured the product was not contaminated by exposure to mold and bacteria.

7. Plaintiff reserves the right to seek leave to amend this complaint to add new Plaintiffs, if necessary.

8. Defendant Colgate Palmolive Company ("Colgate") is a publicly traded company whose principal place of business is located in New York.

9. Defendant Tom's of Maine, Inc. ("Tom's") is a U.S. manufacturing company whose principal place of business is located in Kennebunk, Maine. It is a majority-owned subsidiary of Colgate.

10. Defendants, at all times herein mentioned, were business entities qualified to do business and actually conducting business throughout the State of California, including in this district.

11. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

12. Tom's is based in Kennebunk, Maine, and is a subsidiary of the multinational conglomerate Colgate. Tom's' contaminated toothpaste products are sold in major retailers in California such as Sprouts Farmers Market, Whole Foods, Target, Walmart, including major grocery chains, health foods stores, and other retailers.

13.     Tom's holds itself out at adhering to a "Stewardship Model" in its approach to "ingredient selection when creating safe and effective products for you. We work very hard to find and combine the best naturally sourced and naturally derived ingredients."[1]

14.     Tom's claims that its ingredient processing supports human health, and that its products are safe, healthy, natural, and effective. *Id.*

15.     In November 2024, the US Food and Drug Administration ("FDA") issued a warning to Defendants after it found three types of disease-causing bacteria, powder residues, and black mold-like substances at Tom's of Maine facility where it manufactures toothpaste in Sanford, Maine. (*See* FDA Letter attached as **Exhibit 1**).[2] At least three species of harmful bacteria were found: 1) *Paracoccus yeei*, 2) *Pseudomonas aeruginosa*, and 3) *Ralstonia insidiosa*.

16.     Three brands of Tom's' toothpaste exposed to mold and bacteria contamination in Tom's' manufacturing process were identified by the FDA: Tom's Simply White Mint Paste, Tom's Wicked Cool! Anticavity Toothpaste, and Tom's Silly Strawberry Anticavity, ("the contaminated toothpaste product(s)"). *Id.*

17.     In addition, the FDA stated that Tom's had received hundreds of consumer complaints, which it failed to investigate. The warning letter mandates that Tom's must submit multiple documents, including assessments and remediation plans for its operations, contamination hazards, testing methods, and cleaning procedures. *Id.*

18.     The FDA said despite the results of microbial tests it conducted, Tom's continued to distribute merchandise based on the test results of final products, but did not investigate the quality of water used in the process. *Id.*

19.     Defendant Tom's responded to the FDA by stating it is retrospectively looking into the incidents, and that the detection of the bacteria *Paracoccus yeei* in Tom's Wicked Cool! Anticavity Toothpaste was due to the "sample contamination" of the testing lab's sample.

---

[1] *Stewardship Model*, TOM'S OF MAINE, https://www.tomsofmaine.com/our-promise/stewardship-model (last visited Dec. 20, 2024).
[2] U.S. Food and Drug Administration, *Warning Letter Colgate-Palmolive/Tom's of Maine, Inc.*, (Nov. 5, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/colgate-palmolivetoms-maine-inc-687043-11052024 (last visited Dec. 20, 2024).

However, the FDA found no evidence to support this claim, particularly in light of the fact that "the initial investigation stated no laboratory errors were identified." *Id.*

20. The bacteria *Pseudomonas aeruginosa*—which can cause infections in the blood and lungs—was also recovered in multiple Tom's' water samples from June 2021 to October 2022. That water was used to manufacture Tom's Simply White Clean Mint Paste, and for the final rinse of numerous equipment cleaning processes, according to the FDA. *Id.*

21. The bacteria *Ralstonia insidiosa* was also recovered from water points of use. The FDA found that batches manufactured after these incidents were released based on the microbial testing of the finished over-the-counter product, despite the quality of the water used as a component or to clean the equipment. The FDA warned that Tom's' internal investigation concluded, without sufficient justification, that the growth was due to sample contamination. *Id.*

22. An FDA investigator observed a "black mold-like substance" at the base of a hose reel and behind a water storage tank at the facility, which was within a foot away from equipment used for toothpaste production. *Id.*

23. The FDA investigator observed powder residues at a stainless-steel tray adjacent to the location used to compound Tom's Silly Strawberry Anticavity toothpaste. *Id.*

24. The FDA also found that Tom's failed to investigate hundreds of product complaints regarding odor, color, and taste because they did not indicate a trend. According to the FDA, Tom's responded by saying it handles complaints with a "risk-based approach," and that individual complaints are not enough to deem a product inadequate. *Id.*

25. The FDA's letter also stated: "Water is a major ingredient in many of your OTC drug products. It is essential that you employ a water system that is robustly designed, and that you effectively control, maintain, and monitor the system to ensure it consistently produces water suitable for pharmaceutical use." *Id.*

26. When purchasing Tom's toothpaste, Plaintiff reviewed the accompanying labels and disclosures and understood them as representations and warranties by the manufacturer that the toothpaste products were properly manufactured, free from defects, safe for their intended use, and not adulterated or misbranded. Plaintiff relied on these representations and warranties in deciding

to purchase the toothpaste products manufactured by Defendants, and these representations and warranties were part of the basis of the bargain.

27. Specifically, before her purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and she made her purchase of the contaminated toothpaste in reliance thereon. Plaintiff specifically relied upon representations made by Defendants that the product was "naturally sourced," "good for you," and created with "rigorous ingredient and packaging standards."

28. Had Plaintiff known that any amount of harmful mold or bacteria was or risked being contained in the toothpaste products she purchased, she would not have purchased and used the products at all or would have paid significantly less for them. Plaintiff would have never paid a premium for toothpaste products that contained or were at risk of containing mold and bacteria.

29. Plaintiff suffered economic injury when she spent money to purchase toothpaste products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein. Members of the putative class have likewise suffered economic injuries in that they have spent money to purchase toothpaste products they would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein.

## CLASS ACTION ALLEGATIONS

30. Class Definition: Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **The National Class**: All persons in the United States who purchased the contaminated Tom's of Maine toothpaste products from the time beginning three years before this Complaint is filed until the class is certified.
>
> **The California Class**: All persons in California who purchased the contaminated Tom's of Maine toothpaste products from the time beginning three years before this Complaint is filed until the class is certified.

///

///

///

31. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

32. **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands and that members of the Class are numerous and geographically dispersed throughout California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

33. **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

34. **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

    (a)    whether Defendants committed the conduct alleged herein;

    (b)    whether Defendants' conduct constitutes the violations of laws alleged herein;

    (c)    whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

    (d)    whether Tom's of Maine toothpaste products are adulterated and/or misbranded under California law or federal law;

    (e)    whether Defendants knew or should have known that the representations were false or misleading;

///

     (f)     whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on Tom's of Maine toothpaste products;

     (g)     whether Defendants' representations, concealments, and non-disclosures concerning the Tom's of Maine toothpaste products are likely to deceive the consumer;

     (h)     whether Defendants' representations, concealments, and non-disclosures concerning the Tom's of Maine toothpaste products violate California law or federal law;

     (i)     whether Defendants should be permanently enjoined from making the claims at issue; and

     (j)     whether Plaintiff and the Class are entitled to a full refund, restitution, or other damages.

35.    **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

     (a)     given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them,

and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

(b) when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

(c) this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

(d) without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continues to reap and retain the substantial proceeds of their wrongful conduct.

36. **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendants have acted on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

(Intentional Misrepresentation as to Both Classes)

37. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

38. Reasonable consumers purchase toothpaste to clean their teeth. Particularly, consumers purchase Tom's toothpaste because it is marketed as "safe," "natural," and "healthy," and is promoted by Tom's in health foods stores as a healthier alternative to legacy toothpaste options, for example, Colgate products, which largely make no claims to superior natural or healthy sourcing in ingredients.

39. Defendants manufacture the contaminated toothpaste products for the express purpose of making sales. Product labeling plays an important role in the consumer purchase decision process for merchandise sold at mass merchandisers such as health foods stores and supermarkets.

///

40. Defendants represented to Plaintiff and the Class members that its toothpaste products were safe, natural and healthy.

41. These statements would lead a reasonable person to conclude that the products were not exposed to mold and bacteria in the manufacturing process.

42. Plaintiff and the Class members reasonably relied on the representation that the products were safe, healthy, and natural. Based on that belief, Plaintiff and the Class members purchased the products.

43. Consumers purchase Tom's toothpaste because it is marketed as "safe," "natural," and "healthy," and is promoted by Tom's in health foods stores as a healthier alternative to legacy toothpaste options, for example, Colgate products, which largely make no claims to superior natural or healthy sourcing in ingredients.

44. Because Defendants' contaminated toothpaste products were exposed to mold and bacteria in the manufacturing process, reasonable consumers are misled and deceived by Defendants' marketing of the products as safe, healthy, and natural.

45. As a result, Plaintiff and the Class members were harmed when they purchased the products. Plaintiff and the Class members paid for a product that they would not otherwise have purchased.

46. Plaintiff's and the Class members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiff and the Class members known that it had the products were manufactured in an environment exposed to harmful mold and bacteria, they would not have purchased the products.

47. As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and the Class members have suffered injury and are entitled to damages in an amount to be proven at trial but more than the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

(Negligent Misrepresentation as to Both Classes)

48. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

9
CLASS ACTION COMPLAINT

49. Defendants represented to Plaintiff and the Class members that products were safe, healthy, and natural.

50. This statement would lead a reasonable person to conclude that the products were manufactured in an environment free from mold and bacteria contamination.

51. These representations were false. The FDA's letter proves that the contaminated toothpaste products were manufactured in a contaminated environment.

52. Defendants had no reasonable grounds for believing the contaminated toothpaste products were safe, healthy, and natural, when it sold them.

53. Defendants intended that Plaintiff and the Class members rely on the representations. The advertisement was placed on product packaging and on the product itself for the sole purpose of inducing customers to purchase the product. Defendants understood, or should have understood, that a reasonable person would believe that products marketed as safe, natural, and healthy are not manufactured in an environment contaminated by dangerous and illness-inducing mold and bacteria.

54. Plaintiff and the Class members reasonably relied on the representations that the products were safe, healthy, and natural, and based on that belief, and because of it, Plaintiff and the Class members purchased the contaminated toothpaste products.

55. As a result, Plaintiff and the Class members were harmed when they purchased the contaminated toothpaste products that in fact not safe, healthy, or natural, as the products expose them to unnecessary health risks. Plaintiff and the Class members also paid for products that they would not otherwise have purchased.

56. Plaintiff and the Class members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiff and the Class members known that the products were not safe, healthy, and natural, Plaintiff and the Class members would not have purchased the contaminated toothpaste products.

57. As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial but more than the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

(Violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et. seq. as to the California Class)

58. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

59. Defendants' statements that the contaminated toothpaste products were safe, natural, and healthy were false. Numerous scientific studies prove that the three types of bacteria identified by the FDA, which contaminated the products during the manufacturing process, are unsafe for human consumption, are harmful to human health, are not naturally-occurring in a clean pharmaceutical manufacturing environment. These advertisements were made by Defendants on product labels and packaging to California residents, and on other advertising.

60. Plaintiff and the Class members relied on the advertisements by purchasing the products which they believed were safe, healthy, and natural. These representations were material to Plaintiff's and the Class members' decisions to purchase the contaminated toothpaste products.

61. As a result, Plaintiff and the Class members were damaged. Plaintiff and the Class members did not receive the benefits of their bargains and used products which were not safe, healthy, and natural. Plaintiff and the Class members paid for a product that they would not have purchased had they known the truth.

62. Plaintiff have suffered monetary injury in fact as a direct and proximate result of the violations of the False Advertising Law committed by Defendants as alleged herein in an amount to be proven at trial but more than the minimum jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

(Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. as to the California Class)

63. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

64. By its actions and conduct as alleged herein, Defendants has committed one or more acts of unfair competition within the meaning of California

11

CLASS ACTION COMPLAINT

65. Business and Professions Code § 17200 ("UCL") that constitute unfair and unlawful business practices as those terms are defined under California law.

66. Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class members. These business practices, described above, include creating false advertisements. The false advertisements are substantially injurious because they induce consumers to make purchases that they would not otherwise make, in expectation of receiving benefits that they do not receive. Further, the impact of the practice against Plaintiff and the Class members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiff and the Class members has been described. Defendants have no justification for including a false inducement to purchase its product. Plaintiff and the Class members could not reasonably have avoided this injury because they relied on Defendants' advertisement as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do.

67. Defendants' false advertisement is violative of public policy as expressed in the False Advertising Law. Each of these statutes strictly forbids false advertisement such as Defendants have disseminated and/or caused to be disseminated and represent expressions of public policy against this practice.

68. Defendants' business practices are also unfair because they significantly threaten or harm competition. Competition is fostered by an environment in which information can be relied upon, so that consumers can make wise decisions, and so that products which accurately reflect the consumers' wishes can flourish.

69. As shown above, Defendants' business practices are also unlawful because they violate the False Advertising Law.

70. Defendants' business practices are also unfair and unlawful under the UCL because they constitute representations to the public which are likely to deceive the public. Defendants' representations indicate that the products are safe, healthy, and natural, when in fact the products have been contaminated by exposure to harmful mold and bacteria. The public, receiving these

1  representations, is likely to believe that the products are safe, healthy, and natural, and is so
2  deceived.

3      71.    Defendants' representations are likely to deceive the public because they are untrue
4  and because they create the impression that the products are safe, healthy, and natural. A reasonable
5  consumer would be likely to believe that, if Defendants describe their product in this way, the
6  products are not exposed to and contaminated by harmful mold and bacteria in the manufacturing
7  process.

8      72.    Plaintiff and the Class members relied on these representations when they purchased
9  the contaminated toothpaste products, which they would not have otherwise purchased.

10      73.    Plaintiff has suffered monetary injury in fact as a direct and proximate result of the
11  acts of unfair competition committed by Defendants as alleged herein in an amount to be proven
12  at trial but more than the minimum jurisdictional amount of this Court.

## FIFTH CAUSE OF ACTION

(Breach of Express Warranty as to Both Classes)

15      74.    Plaintiff repeats and incorporates herein by reference each and every allegation
16  above if set forth fully herein.

17      75.    Defendants expressly warranted through advertising, marketing materials, and
18  product labeling that the contaminated toothpaste products were safe, healthy, and natural.

19      76.    Plaintiff relied on these express representations and warranties in purchasing the
20  products.

21      77.    Contrary to Defendants' express warranties, the products did not conform to the
22  advertised representations. Specifically, the products were unsafe, unnatural, and unhealthy.

23      78.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff
24  suffered damages, including but not limited to financial loss, inconvenience, and pain and suffering
25  caused by concerns that they had unnecessary compromised their health and safety by using the
26  contaminated toothpaste products.

///

## SIXTH CAUSE OF ACTION

(California Civil Code § 1770(a)(5) "California Consumer Legal Remedies Act" as to the California Class)

79. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

80. Defendants' conduct constitutes unfair or deceptive acts or practices in violation of the California Civil Code § 1770(a)(5) ("CLRA"), which prohibits representing that goods have characteristics, uses, or benefits which they do not have.

81. Defendants' actions were intended to and did result in the sale of the toothpaste products to Plaintiff and other consumers under false pretenses.

82. Concurrent with the filing of this Complaint, Plaintiff has sent a letter to Defendants placing them on notice of the CLRA violation.

83. Plaintiff intends to amend his Complaint to confirm that Defendants' conduct remains in violation of the CLRA if Defendants do not rectify their conduct with regard to the contaminated toothpaste products within 30-days.

## SEVENTH CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability, Cal. Civ. Code § 1791.1(a) as to the California Class)

1. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

2. Plaintiffs and members of the Class are buyers.

3. The contaminated toothpaste products are consumer goods.

4. Defendants are manufacturers of the contaminated toothpaste products.

5. Defendants impliedly warranted to the Plaintiffs that the toothpaste products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the products do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

///

6. Cal. Civ. Code § 1791.1(a) states:
"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
1. Pass without objection in the trade under the contract description.
2. Are fit for the ordinary purposes for which such goods are used.
3. Are adequately contained, packaged, and labeled.
4. Conform to the promises or affirmations of fact made on the container or label.

7. The contaminated toothpaste products are not fit for the ordinary purpose of cleaning one's teeth because they present an unnecessary danger to the user's health.

8. The contaminated toothpaste products do not conform to Defendants' claims that they are safe, healthy, and natural.

9. The contaminated toothpaste products are not adequately labeled because the labeling fails to disclose contamination. The Defendants failed to warn about that dangerous mold and bacteria contaminating the primary ingredient they used to manufacture the toothpaste, water.

10. Defendants breached the implied warranty of merchantability by manufacturing and selling contaminated toothpaste, which has deprived the Plaintiffs of the benefit of their bargain, causing the toothpaste to lose all value.

11. Notice of breach is not required because Plaintiffs and the Class did not purchase the products directly from Defendants. Furthermore, Defendants had notice of these issues by their knowledge of the issues through complaints and Defendants' own internal investigation. For example, approximately 400 complaints related to odor, color, and taste in Defendants' toothpaste products, including those for children, were not investigated by Defendants. These complaints were not investigated because Defendants' procedure requires an investigation "only if a trend is identified." Defendants only investigate complaints related to adverse events, foreign matter, and incorrect products, and Defendants refused to recall the contaminated toothpaste products.

12. As a direct and proximate result of Defendants' failure to sell merchantable toothpaste products, Plaintiff and the Class received goods whose dangerous condition makes them valueless. Plaintiffs and the Class have been damaged by the products' total loss of value and inability to use the contaminated toothpaste products.

///

13. Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the contaminated toothpaste products, and their loss of value. Defendants' deceptive acts or misrepresentations caused a price premium. This means that the misrepresentation led to an inflated price for the product, which was charged to all consumers, regardless of whether they relied on the misrepresentation

14. Plaintiffs paid more for the contaminated toothpaste products than they would have if Defendants had not misrepresented that the products were safe, healthy, natural, and effective, all unique and desirable qualities, but qualities which the contaminated products did not in fact have.

15. Defendants' deceptive advertising boosted market-wide demand for natural, safe, healthy, and effective toothpaste products, allowing Defendants to raise prices for all consumers.

16. Under Cal. Civ. Code § 1794, Plaintiffs and the Class are entitled to costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B. An order enjoining Defendants from selling the contaminated toothpaste products;

C. An order enjoining Defendants from suggesting or implying that they are safe and effective for human use;

D. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing contaminated toothpaste products;

E. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F. An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law or other California law, plus pre- and post-judgment interest thereon;

G. An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H. An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I. An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

Respectfully submitted,

Dated: December 20, 2024　　　　**WILSHIRE LAW FIRM, PLC**

By: _____
Thiago M. Coelho
Shahin Rezvani

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all causes of action triable by jury.

Dated: December 20, 2024　　　　**WILSHIRE LAW FIRM, PLC**

By: _____
Thiago M. Coelho
Shahin Rezvani

*Attorneys for Plaintiff*